**EASTERN PRE–CAST CORPORATION**

v.

**GIANT PORTLAND CEMENT COMPA-NY, Concrete Conduit Corporation, John D. Wilson.**

**Civ. A. No. 68–1567.**

United States District Court,
E. D. Pennsylvania.
April 22, 1970.

Marvin Comisky, Morris L. Weisberg, Richard P. McElroy, Philadelphia, Pa., for plaintiff.

William T. Coleman, Jr., Louis M. Natali, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, District Judge.

Defendant Concrete Conduit Corporation (hereafter "Defendant") has moved to dismiss on the grounds of improper venue. Section 12 of the Clayton Act, 15 U.S.C. § 22, provides:

> "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The term "transacts business" is used in its "ordinary and usual sense," United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) and requires "some amount of business continuity" and "more than a few isolated and peripheral contacts" with the district, Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa., 1966).

The only evidence before us are two affidavits and the deposition of Innis O'Rourke, Jr., Defendant's Vice-President. From these sources, it appears: Conduit has never had a bank account, leased, or owned property, had an agent or representative, or sold or delivered any merchandise in the Eastern District of Pennsylvania. It is a New York corporation, with its principal place of business in Queens County, New York, and it has never been registered to do business in Pennsylvania. Ninety per cent of its sales are in New York.

On one occasion, when one of Defendant's salesmen was en route to Maryland, he stopped in to see a prospective but unidentified customer in Pennsylvania. We do not know where in Pennsylvania this prospective customer was located, or the date of the visit. On another occasion about five years ago, O'Rourke and his father stopped in Pennsylvania on the way to Florida "to see a man about a new way of making conduit." Three or four times in 1966 or 1967, Defendant's plant superintendent visited Eastern Pre-Cast to inspect and advise on their operation, on one of which visits a representative of Giant Portland Cement Company was present.

It also appears that since at least 1950, Defendant has purchased some cement from suppliers in Pennsylvania. O'Rourke mentioned several Pennsylvania cement companies,—Lehigh, Coplay and Giant Portland,—but except for the last, it is not clear that any purchases were made from them. As to Giant Portland, Defendant purchased cement from it "[o]ccasionally, yes: very little." These purchases are made from salesmen who visit Conduit's place of business for orders. It is true that "in any line of commerce purchasing may very well be as important to business as to the selling of commodities." Crusader Marine Corporation v. Chrysler Corporation, 281 F.Supp. 802, 804 (E.D.

Mich., 1968). However, in that case, it appeared that approximately ninety-eight per cent of the engines defendant sold were manufactured in Michigan, the challenged venue, and purchases there aggregated between $1,600,000 and $2,100,000 annually. Here, there is no evidence of the amount of Defendant's purchases in this district or what the percentage those purchases were of its total purchases, except that purchases from Giant Portland were occasional and "very little."

We can only conclude that on the record before us, Defendant's activities in this district were no "more than a few isolated and peripheral contacts," Stern Fish Co. v. Century Seafoods, Inc., *supra.* Such contacts will not support venue in the face of attack and the motion to dismiss will be granted.

It is so ordered.