**UNITED STATES of America,
Plaintiff,**

v.

**SEARS, ROEBUCK & COMPANY, The B. F. Goodrich Company and Sidney J. Weinberg, Defendants.**

United States District Court
S. D. New York.
July 29, 1958.

Harry N. Burgess, Department of Justice, Washington, D. C., for plaintiff.

Sullivan & Cromwell, New York City, Howard T. Milman, New York City, of counsel, for defendant.

WEINFELD, *District Judge.*

This is a motion for construction of the decree of this Court rendered five years ago in United States v. Sears, Roebuck & Co., D.C.S.D.N.Y., 111 F.Supp. 614. In that action the Government sought to compel the defendant Weinberg to resign as a director of either or both of the corporate defendants, Sears, Roebuck & Co. and the B. F. Goodrich Co., on the ground that his dual directorship violated Section 8 of the Clayton Act.[1] The Court granted the Government's motion for summary judgment and after considering the various proposals and counter-proposals submitted

1. 15 U.S.C.A. § 19.

by the parties, signed a decree the pertinent parts of which follow:

## III.

The defendant Sidney J. Weinberg is ordered and directed to resign his directorship in the defendant Sears or the defendant Goodrich no later than September 30th 1953 and to withdraw from participation in the direction, control, or conduct of the business of the corporate defendant from which he resigns. * * *

## V.

The defendant corporation from which the defendant Sidney J. Weinberg resigns as a director in accordance with the provisions of Paragraph III of this judgment is directed to accept the resignation of the defendant Sidney J. Weinberg and is hereby perpetually enjoined from permitting him to be elected as a director, allowing him to serve as a director, or permitting him to participate in the direction, control or conduct of the business of said defendant.

On September 21, 1953, Weinberg resigned his directorship in Sears. He remained a director of Goodrich. He and Sears now ask the Court to construe its decree to enable the present Board of Directors of Sears to appoint Weinberg as a trustee of its Savings and Profit Sharing Pension Fund while he continues to serve as a director of B. F. Goodrich Company.

The Fund in question was established in 1916. All Sears' employees with one year of seniority are eligible to join. As members of the Fund they contribute five per cent of their salaries up to an annual maximum of $500. Sears contributes an additional amount each year measured by a percentage of its net income in accordance with a prescribed formula.

The Rules and Regulations which govern the administration and investment of the Fund provide that it shall be under the management of not less than five nor more than seven trustees appointed for three year terms by the Board of Directors of Sears. They further provide that "so far as practicable and advisable" the Fund shall be invested in Sears stock. The trustees, however, are given discretion to make other investments with "as wide latitude * * * as if they, as individuals, were the absolute owners thereof". A recent amendment provides that all the trustees except two shall be officers, directors or employees. Thus in the discretion of the Board of Directors there may, but need not be two so-called outside trustees. The directors intend to appoint Weinberg as one of these.

The Fund, which in addition to contributions includes profits and income from investments, has grown tremendously since 1916. As of December 31, 1957, its assets were $704,000,000 and the income for that year was $96,000,-000. It is anticipated that the annual income will continue at the same rate. The bulk of the assets consisted of almost 19,500,000 shares of Sears common stock representing twenty-six percent of the total shares outstanding and having a market value at the end of 1957 of almost $500,000,000. The balance of the Fund's other assets consisted in the main of commercial paper, debentures and preferred and common stock of other companies.

The Sears common stock owned by the Fund is entitled to full voting rights on all issues submitted by Sears' management to stockholder vote, including election of directors of the company. Until recently this stock was voted by all the trustees of the Fund. In May 1958 an amendment was enacted which provided that the Sears stock is to be voted by a majority of the committee of the three trustees who are not officers or directors of Sears (hereafter called the voting committee) subject to voting instructions by participants in the Fund. Thus, if Weinberg were appointed a trustee of the Fund, the voting committee would

consist of him, the second outside trustee and the employee trustee. It is desirable to analyze what this voting power means.

The shares of Sears stock in the Fund are allocated among participating members who, after the expiration of five years, acquire vested rights in the Fund. Under the recently adopted amendment each member of the Fund having such a vested interest in the stock owned by the Fund has the right to "instruct" the voting committee with respect to the voting of such shares. These "instructions" are in the form of proxies. At present ninety-five per cent of the Sears stock in the Fund (approximately 18,-525,000 shares) is subject to such instruction. The remaining five per cent (975,000 shares) is not. Past experience demonstrates that one-third of the Sears shares, other than those held by the Fund, are not voted. Based on this experience it is fair to anticipate that the same proportion of the shares held by the Fund will not be instructed. These uninstructed shares amounting to over 6,100,000 will be voted by the voting committee. When this amount is added to the five percent or 975,000 shares which are not subject to instruction at all, two of the three voting trustees, Weinberg among them, would have the power to vote approximately 7,100,000 shares. This number of shares is about 38⅓% of the Sears stock held by the Fund. This is the largest single voting block of all outstanding Sears stock. There can be little doubt that this represents effective voting control.

The question presented is whether Weinberg's service as a voting trustee of the Fund would contravene sections III and V of the Court's decree prohibiting him "from participating in the direction, control or conduct of the business" of Sears. The provisions of the decree are not limited to the language of Section 8 of the Clayton Act which by its terms is applicable to directors of corporations engaged in competition. The Court's decree was fashioned not only to eliminate existing violation of the law but to prevent any further violation, whether direct or indirect.[2]

The reason advanced for Weinberg's proposed appointment by the Board of Directors as one of the outside trustees of the Fund is his vast experience in the investment and business world. His advice, however, could readily be secured either through his, or his firm's, retention as an investment counselor or even as a member of the Investment Committee of the Fund. The members of this Committee, appointed by the trustees of the Fund, exercise with respect to its investments "all the powers, authorities and discretions vested in the Trustees". This power is as broad as that granted to the trustees themselves subject only to such limitations as may be imposed by them. Weinberg's appointment to the Investment Committee would not give him voting power as a trustee of the Fund. The directors, however, contend that advice is one thing—responsibility for decision another,[3] and that therefore it is more desirable for Weinberg to be a member of the Board of Trustees responsible for policy decisions rather than a retained investment adviser or even a member of the Fund's Investment Committee. The recent amendment was drawn so that the "outside" trustees (and the employee trustee) of the Fund automatically become members of the voting committee. The other four members of the Board of Trustees who are Sears officers or directors have no voice in voting the Sears stock, but they too are charged with responsibility for policy decisions relating to investment and management of the Fund. In the light of the foregoing, the arguments advanced by the directors do not appear to justify vesting in Weinberg vast potential voting power over 7,100,000 shares. While it is true he would be only one of three

2. See United States v. United States Gypsum Co., 340 U.S. 76, 88–89, 71 S.Ct. 160, 95 L.Ed. 89; International Salt Co. v. United States, 332 U.S. 392, 400– 401, 68 S.Ct. 12, 92 L.Ed. 20. See also United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303.

members of the Board of Trustees, his past participation for many years in the affairs of Sears as a director is not to be disregarded. It could, without in anywise questioning the independence of the other two voting members of the Board of Trustees, readily mean that his influence would be all pervasive.

■ To segregate Weinberg's function as a voting trustee of the Fund with its control over millions of shares of Sears stock, from his relationship to Sears itself, is unrealistic. Since the Fund, with twenty-six percent of all the outstanding stock, is the largest voting stockholder of Sears its power in the election of directors is obvious. Its voice in the councils of Sears' management is bound to be a potent one. Its recommendations as to the policies and operations of Sears could hardly be ignored. Neither is it to be overlooked that a dominant stockholder is equated to a director of a corporation in terms of fiduciary obligations.[3]

As a trustee of the Fund, Weinberg would be in a position to obtain important information as to Sears' current and projected affairs which otherwise might not be available to him. The knowledge so gained would necessarily be with him when he functions as a Goodrich director. Thus indirectly he would again be sitting in a dual capacity in two competing corporations.

■ Under the circumstances, to allow Weinberg to become a trustee of the Sears Fund with voting power over its controlling block of Sears common stock, would be to disregard the spirit and purpose of that portion of the decree which directed him to "withdraw from participation in the direction, control and conduct of the business [of Sears] * * *". It would also contravene that portion which perpetually enjoins Sears as the corporation from which Weinberg resigned " * * * from permitting him to be elected as a director, allowing him to serve as a director, *or* permitting him to participate in the direction, control or conduct of the business of said defendant * * *". (Emphasis supplied.)

What is prohibited directly under the decree may not be achieved indirectly. To appoint Weinberg a trustee of the Fund would sterilize the Court's decree. Accordingly, it is construed as prohibiting the appointment.

---

3. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Perlman v. Feldmann, 2 Cir., 219 F.2d 173, 50 A.L.R.2d 1134,

certiorari denied, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277.