504

UNITED STATES of America,
Plaintiff,

v.

NEWMONT MINING CORPORATION,
Magma Copper Company, Phelps Dodge
Corporation, Plato Malozemoff, Roy C.
Bonebrake, Franz Schneider and Kenneth L. Isaacs, Defendants.

United States District Court
S. D. New York.

Feb. 11, 1964.

Larry L. Williams, Peter A. Donovan, Leslie S. Mendelsohn, Attys., Dept. of Justice, Washington, D. C., John J. Galgay, Atty., Dept. of Justice, Chief, New York Office, for the United States.

Francis E. Rinehart, Hugh B. Cox, New York City, Henry P. Sailer, Washington, D. C., for defendants Kenneth L. Isaacs and Franz Schneider.

FREDERICK van PELT BRYAN, District Judge.

The Government's complaint in this action alleges stock acquisitions in vio-

lation of § 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and interlocking directorates in violation of § 8 of the act, as amended, 15 U.S.C. § 19. The corporate defendants Newmont Mining Corporation (Newmont), Magma Copper Company (Magma) and Phelps Dodge Corporation (Phelps Dodge) are in the copper industry. Defendants Malozemoff and Bonebrake are alleged to be officers and directors of Newmont and directors of Magma. It is also alleged that defendant Schneider is a director and employee of Newmont and a director of Phelps Dodge, and that defendant Isaacs is a director of both Newmont and Phelps Dodge.

Schneider and Isaacs have answered the complaint, admitting only the directorships charged and denying any violations of law. They now move, pursuant to Rules 12(b)(1) and 12(b)(6), F.R. Civ.P., to dismiss the complaint on the grounds that, as to them, the Government is not entitled to an adjudication of the matters charged in the complaint or to equitable relief. Their motion is based on affidavits stating that they resigned their directorships in Newmont subsequent to the filing of their answers in the action and making representations that they will not again serve as Newmont directors. They also submit affidavits by the president of Newmont, defendant Malozemoff, to a similar effect.

■■ Plainly these defendants have mistaken their remedy here since the motions which they now make are appropriate only before pleading. In effect their motions are for judgment on the pleadings under Rule 12(c); and since matters outside of the pleadings are presented by affidavit, their motion must be treated and disposed of as one for summary judgment as provided in Rule 56. In order to conserve the time of the court the present motions will be so treated and disposed of.

The position of the moving defendants is that because of their resignations and the representations made as to their future conduct, the action is now moot as to them, and that, in any event, the court in its discretion should, at this stage of the action, finally deny equitable relief against them. They place their reliance on United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

■ It is plain that mere resignation of a directorship allegedly held in violation of § 8 of the Clayton Act does not render an action for violation of that section moot. The Grant case expressly so holds.

It further holds that "[t]he case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." United States v. Grant, supra, 345 U.S. at 633, 73 S.Ct. at 897 (quoting United States v. Aluminum Co. of America, 148 F.2d 416, 448 (2 Cir. 1945). In the Grant case "[T]he defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them." But the Supreme Court said "Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts."

The Court went to the question of whether, under the circumstances presented, the district court had abused its discretion in finally refusing to grant equitable relief and giving a summary judgment dismissing the complaint. In order to establish that there was an abuse of discretion it was necessary to demonstrate that "there was no reasonable basis for the District Judge's decision." The Court stated:

"the Chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the express intent to comply, the effectiveness of

the discontinuance and, in some cases, the character of the past violations."

The Court said that, were it sitting as a trial court, the Government's showing as to some cognizable danger of recurrent violation "might be persuasive." It held, however, that the Government had not met the stricter burden required to show that discretion below had been abused and therefore should be overturned.

Thus the Grant case does not stand for the proposition that under the facts present there the district court was *required* finally to deny equitable relief and to grant summary judgment. It held merely that the Supreme Court would not interfere with the discretion exercised by the district court in the absence of a showing that there was no reasonable basis for its exercise.

The moving defendants Isaacs and Schneider here make a two-pronged argument. First they contend that because of their resignations as directors of Newmont and the representations that they will not again become such directors while they hold directorships in Phelps Dodge, they have sustained the heavy burden of showing that there is no reasonable expectation that the wrong will be repeated and that therefore the case is moot as to them. As the second prong of their argument they contend that, in any event under these circumstances, the court in its discretion should finally deny equitable relief and grant them summary judgment.

On their first contention the defendants seek to distinguish the Grant case from the case at bar on the theory that their demonstration that "there is no reasonable expectation that the wrong will be repeated" is sufficiently stronger than was made there to enable them to sustain their burden. I do not think they can be said to have done so.

There are distinctions between the Grant case and the case at bar, some of which cut in favor of the moving de-

fendants and others of which are unfavorable to their position.

In Grant the defendant Hancock was charged with multiple violations of § 8 of the Clayton Act in simultaneously holding directorships in three sets of competing corporations. He resigned all competing directorships shortly after the complaint was filed and made what the Supreme Court referred to as a "limited disclaimer of future intent", 345 U.S. at 634, 73 S.Ct. at 898, by stating in an affidavit that he had no "intention of ever going back on the Board of Directors", and that "my decision could not be revoked by me even if I wished to take such action hereafter, which I would never do."

In the case at bar Schneider and Isaacs have made somewhat stronger disclaimers of future intent, which seem to have been drawn with an eye to the Grant case. In their affidavits they state "without any mental qualifications or reservations of any kind" that they "will not again at the same time be a director of both corporations and that * * * [they] will not participate in the direction, control or conduct of the business of one of the corporations while serving as a director of the other." The president of Newmont, also a defendant, states in an affidavit that he is "authorized by the Board of Directors to state that hereafter the Board will take such lawful action as may be appropriate in order that Kenneth L. Isaacs will not serve as a director of Newmont when he is serving as a director of Phelps Dodge and in order that Franz Schneider will not serve as a director of Newmont while he is serving as a director of Phelps Dodge." In a later affidavit the Newmont president also states that if the Schneider-Isaacs motions to dismiss the complaint are granted "hereafter the Board will take such lawful action as may be appropriate in order that no person will serve as a Director of Newmont when he is at the same time serving as a director of Phelps Dodge."

In both the Grant case and the case at bar the defendants denied that they had violated the law though it may be noted that in the Grant case the resignations took place shortly after the filing of the complaint whereas in the case at bar the defendants' resignations and disclaimers were not made until after they had filed answers expressly denying that the law had been violated.

In the Grant case the Government had been engaged in discussions for some five years with the defendant Hancock who held the allegedly offending directorships, and these discussions had culminated in his resignations after the complaint was filed. Apparently no such discussions had been had with the corporate defendants in which Hancock held the directorships. In the case at bar there had been no previous discussions with the Government. However, as the court in the Grant case pointed out, the fact that such discussions had been carried on with Hancock cuts both ways, and the continuation of discussions and postponement of suit indicated "doubt on the prosecutor's part as much as intransigence on the defendant's." (345 U.S. at 634, 73 S.Ct. at 898).

In the Grant case none of the corporate defendants appears to have engaged in more than one alleged violation. In the case at bar Newmont and Phelps Dodge have had a number of interlocking directorates with each other and with other corporations, claimed by the Government to violate § 8. Moreover, the corporate defendants here are charged with alleged stock acquisitions, in violation of § 7 of the act, as well as interlocking directorates in violation of § 8, and this pattern of prior activities must be given some weight in evaluating the effect of their disclaimers that they would not afford Schneider and Isaacs another opportunity to interlock.

In the Grant case the defendant Hancock had apparently severed all connections with the competing corporations. In the case at bar the defendant Schneider has continued his relationship with Newmont subsequent to his resignation as director in a rather ill-defined capacity of financial advisor to the corporation.

Finally, in the Grant case the Government on the motion for summary judgment raised no objection to the procedure by which the case was handled, elected not to file any countervailing affidavits and stated on oral argument that the truth of the defendants' affidavits was not questioned. In the case at bar, on the other hand, the Government has filed a countervailing affidavit that points to a series of prior alleged violations of § 8 by the competing corporations and questions the bona fides of the disclaimers of future intent by Schneider and Isaacs and by the president of Newmont.

These distinctions between the Grant case and the case at bar do not impel the conclusion that the moving defendants are entitled to summary judgment on the issue of mootness. They have not shown sufficient on this motion to establish that there is no genuine issue of material fact as to whether "there is no reasonable expectation that the wrong will be repeated." The previous alleged violations of § 8 by the defendant corporations, their alleged stock acquisitions in violation of § 7, the continuance of Schneider's activities on behalf of Newmont, the firm position taken in the moving defendants' answers as to the legality of their actions, and the delay in resigning after the commencement of the actions, are all factors to be taken into account in determining the reasonable expectations as to future violations. The disclaimers of future intent must be viewed against that background.

As to the disclaimers themselves, they are self-serving declarations of parties to the action concerning their future intentions which necessarily cannot be supported by disinterested testimony and which are untested by cross-examination. The disclaimers are questioned by the Government. In such a situation sum-

mary judgment should not be used to "withdraw these witnesses from cross-examination, the best method yet devised for testing trustworthiness of testimony." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 628, 64 S.Ct. 724, 88 L.Ed. 967 (1944). This is especially true where future intentions must be evaluated against a background of prior activities. This is "peculiarly the kind of case where the triers of fact whose business it is not only to hear what men say but to search for and find the roots from which the sayings spring, should be afforded full opportunity to determine the truth and integrity of the case." Loudermilk v. Fidelity and Casualty Co., 199 F.2d 561, 565 (5 Cir. 1952). See also Sartor v. Arkansas Natural Gas Corp., supra; Alvado v. General Motors Corp., 229 F.2d 408 (2 Cir.), cert. den. 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497 (1956); Subin v. Goldsmith, 224 F.2d 753 (2 Cir.), cert. den. 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779 (1955), and cases there cited; Colby v. Klune, 178 F.2d 872, 873–875 (2 Cir. 1949); Arnstein v. Porter, 154 F.2d 464, 471 (2 Cir. 1946); Toebelman v. Missouri-Kansas Pipe Line, 130 F.2d 1016, 1022 (3 Cir. 1942). The moving defendants are not entitled to summary judgment on the issue of mootness.

 There remains the question of whether, in the exercise of the court's equitable discretion, injunctive relief should be finally denied as against the moving defendants at this stage of the action and summary judgment should therefore be granted dismissing the complaint. As I have already pointed out, the Grant case does not require that discretion be so exercised even under the state of facts presented there since the only question on which the Supreme Court passed was whether or not the district court had abused its discretion. It is unnecessary here to determine whether or not I would have exercised my discretion on the facts in the Grant case in the same way as did the district court there in view of the distinctions between that case and the case at bar.

For the same reasons that I denied the defendants' motion for summary judgment on the issue of mootness I am persuaded that my discretion should not be exercised so as to finally deny equitable relief as to them at this time. In my view that issue should also be determined at a trial where the Government will have the opportunity of testing the representations of the various party defendants by appropriate cross-examination.

Moreover, in my view this is not a case which should be truncated by granting summary judgment to these two defendants on either of the grounds they advance at this stage of the action.

The motion of defendants Schneider and Isaacs is accordingly denied in all respects.

It is so ordered.