**SCM CORPORATION, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 53, Docket 77–4078.**

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1977.

Decided Dec. 23, 1977.

William E. Willis, New York City (Sullivan & Cromwell, New York City, James E. Tyrrell, Jr., New York City, of counsel, Milton Wolson, New York City, on the brief), for petitioner.

David C. Shonka, Atty., F. T. C., Washington, D. C. (Michael N. Sohn, Gen. Counsel, Gerald P. Norton, Deputy General Counsel, Jerold D. Cummins, Acting Asst. Gen. Counsel, Washington, D. C., on the brief), for respondent.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

This petition by SCM Corporation to set aside an order of the Federal Trade Commission raises an issue of first impression in this court: Whether section 8 of the Clayton Act, regulating interlocking directorates, applies to corporations as well as to individual directors. We hold that it does, but because the FTC may have applied the

wrong legal standard in entering a cease and desist order against SCM, we remand for further proceedings.

## I

This proceeding grows out of the circumstance that from 1967 to 1975 Richard C. Bond was a member of the board of directors of both SCM and Kraftco Corporation, which competed with each other in certain markets. SCM is a diversified company which manufactures and distributes such products as business equipment, home appliances, paint, food and chemicals. Its sales in the fiscal year ended June 30, 1975 were $1,287,000,000. Kraftco is a leading processor and distributor of cheese and dairy products. Its total sales in the year ending December 31, 1974 were $4,500,000,000. Both corporations sell margarine, barbecue sauce and edible oils. In fiscal 1975, SCM sold approximately $83 million of these products in competition with Kraftco. In the same period, Kraftco's sales of the same products, in competition with SCM, were approximately $258 million. The capital, surplus and undivided profits of both corporations aggregate more than $1 million.

In June 1975, the FTC issued a complaint against Kraftco, SCM and Bond, alleging that Bond's presence on the board of directors of both corporations violated section 8 of the Clayton Act, 15 U.S.C. § 19.[1] Shortly after the complaint was issued, Bond resigned from the SCM board. Thereafter, he consented to the entry of a cease and desist order, as did Kraftco. SCM answered the complaint and moved for summary decision, arguing, among other things, that Bond's resignation from SCM had mooted the proceeding against it, that competition between SCM and Kraftco was insufficient to justify a section 8 pro-

ceeding, that the section does not apply to corporations, and that the FTC was enforcing the section in a discriminatory fashion. The FTC also moved for summary decision. The case was submitted to the Administrative Law Judge on a stipulated record. In June 1976, the ALJ filed an Initial Decision and Order against SCM, finding that section 8 had been violated and that a cease and desist order was justified. SCM appealed to the Commission, which in January 1977 issued a written opinion, affirming the decision of the ALJ.[2] SCM then filed this petition for review.

## II

In this court, SCM repeats many of the arguments made in the administrative proceedings below, and additionally contends that injunctive relief was both unwarranted and granted pursuant to an erroneous legal standard.[3] First, however, we turn our attention to the substantial issue concerning the scope of section 8, which provides in pertinent part:

> No person at the same time shall be a director in any two or more corporations, any one of which has capital, surplus, and undivided profits aggregating more than $1,000,000, . . . if such corporations are or shall have been . . . competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the provisions of any of the antitrust laws.

SCM maintains that the prohibition of this section applies only to individual directors and not to the corporations on whose boards the directors serve.

The question thus posed was noted, but not decided, by the Supreme Court in *United States v. W. T. Grant Co.*, 345 U.S. 629, 634 n.9, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Surprisingly, the issue has received scant

---

1. The complaint also charged violation of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).

2. *In re Kraftco Corp.*, 89 F.T.C. 46, 60 (1977). The Commission also found a violation of section 5(a)(1) of the Federal Trade Commission

Act. See note 1 supra. In view of our disposition, we need not consider this aspect of the case.

3. However, SCM does not claim here, as it did below, that the amount of competing sales was de minimis.

attention in decisions of the lower federal courts. We are cited to only two district court cases in point. In *United States v. Sears, Roebuck & Co.*,[4] Judge Weinfeld held that the corporate defendants had violated section 8 by acquiescing in the interlocked directorship. Similarly, the court in *United States v. Crocker National Corp.*, 422 F.Supp. 686, 705–06 (N.D.Cal.1976), appeal docketed, No. 76–3614 (9th Cir. Dec. 10, 1976), stated in dictum that the defendant corporations there would have been subject to injunction had they violated section 8. Perhaps the paucity of judicial writing on the point[5] is due to general acquiescence, despite the Supreme Court's express reservation of the issue, in what the FTC characterized below as "decades of Justice Department and Federal Trade Commission enforcement of the Clayton Act, via voluntary action, consent agreements, and litigation."[6] In any event, we have been unable to find any resolution of this issue by any court of appeals.[7]

SCM contends that the language and legislative history of section 8 support its interpretation. SCM argues that only individuals can violate section 8 because it provides only that "[n]o *person* at the same time shall be a *director* . . . ," (emphasis supplied) and not, for instance, that a corporation is prohibited from electing, or having, a director who is also on the board of a competitor. SCM further points out

that section 8 as first enacted explicitly prohibited banking corporations, but not so-called industrial corporations, from having interlocking directors.[8] SCM also relies on committee reports to support its construction of the section as applying only to individuals.[9]

The FTC argues to us primarily that this restrictive reading of section 8 ignores the policies behind it. The point was well made in the FTC's opinion below:

> To absolve corporations of liability for sharing directors with competitors would, without question, severely undermine enforcement of the law, since any corporation could maintain such an interlocking directorate and, if detected, simply replace the ousted director with another interlocking board member, again without fear that detection could lead to anything more than the director's resignation. Sanctions against individuals alone are likely to be of limited effect, because there are hundreds of thousands of potential corporate directors at any given time. Sanctions against a much smaller number of corporations are far likelier to effectuate the purposes of Section 8, since an order against a corporation will prevent a far larger number of potential interlocks than one against an individual.

89 F.T.C. at 63. The FTC also relies on section 11(b) of the Act, which provides that whenever the Commission finds that any

---

**4.** 1952–53 Trade Cas. (CCH) ¶ 67,561 (S.D.N.Y. 1953); see also *United States v. Sears, Roebuck & Co.*, 165 F.Supp. 356 (S.D.N.Y.1958) and 111 F.Supp. 614 (S.D.N.Y.1953). See generally *United States v. Newmont Mining Corp.*, 34 F.R.D. 504 (S.D.N.Y.1964).

**5.** For law review discussion, see Wilson, Unlocking Interlocks: The On-Again Off-Again Saga of Section 8 of the Clayton Act, 45 Antitrust L.J. 317, 321–23 (1976); Kramer, Interlocking Directorships and the Clayton Act After 35 Years, 59 Yale L.J. 1266, 1268 n.12 (1950). See generally Panel Discussion, Unlocking Interlocks: The On-Again Off-Again Saga of Section 8 of the Clayton Act, 45 Antitrust L.J. 315–51 (1976).

**6.** 89 F.T.C. at 62–63. See, e. g., *Chrysler Corp.*, 83 F.T.C. 1204 (1974). See also Travers, Interlocks in Corporate Management and the Anti-

trust Laws, 46 Tex.L.Rev. 819, 821–22 (1968) ("Moreover, the absence of litigation may indicate that the Department's campaign to secure voluntary compliance is notably successful."); but see Wilson, supra n.5, at 317–19 (enforcement of section 8 described as "long periods of benign neglect" "punctuated by a few bursts of mild activity").

**7.** In *Protectoseal Co. v. Barancik*, 484 F.2d 585 (7th Cir. 1973), then Circuit Judge Stevens stated in dictum that "[t]he corporation itself is a potential defendant in litigation which the government may initiate to enforce § 8."

**8.** Clayton Act, ch. 323, § 8, 38 Stat. 732–33 (1914). This language was subsequently eliminated. Pub.L.No. 305, 49 Stat. 718 (1935).

**9.** E. g., H.R.Rep. No. 627, Part I, 63d Cong., 2d Sess. 17–20 (1914).

person [10] has violated any section of the Act, the Commission

> shall issue and cause to be served on such person an order requiring such person to cease and desist from such violation, and . . . rid itself of the directors chosen contrary to the provisions of [section 8] . . . . (Emphasis supplied).[11]

Since only a corporation can rid itself of a director, the FTC argues that section 8 must apply to corporations as well as to individual directors. SCM rejoins that section 11 is exclusively procedural and cannot add substantive obligations to section 8, and that the language stressed by the FTC is a vestigial remainder of the original section 8 provision that covered banking corporations.[12]

██ We believe that the Commission has the better of these arguments and that section 8 applies to corporations as well as to individual directors. It is true that if the language of the section is considered alone, the result is not clear.[13] But the language of the section does not stand alone and should not be construed as though it did. Its prophylactic purpose was "to nip in the bud incipient violations of the antitrust laws by removing the opportunity or temptation to such violations through interlocking directorates." *United States v. Sears, Roebuck & Co.*, 111 F.Supp. 614, 616 (S.D.N. Y.1953). We agree with the Commission that SCM's reading of the statute undermines it, since a corporation without fear of sanction could have the concededly prohibited "interlocking directorate and, if detected, simply replace the ousted director with another interlocking board member." Thus, policy supports a broad reading of section 8 and section 11 indicates that such a construction is reasonable. It is not at all clear that the language there relied on by the Commission is merely a meaningless vestige of an earlier version of the statute.

The sparse legislative history appears to support the FTC's position. The House Report accompanying the bill talks about "the corporations affected" and states that "[t]his section is divided into three paragraphs, each of which relates to the *particular class of corporations described*, and the provisions of *each* paragraph are limited in their application to the *corporations* belonging to the class named therein." (Emphasis supplied). H.R.Rep. No. 627, 63d Cong., 2d Sess. 18 (1914). The paragraph involved in this case was apparently thought of as controlling interlocks among the "industrial corporations," id. at 19, and not just among directors. Furthermore, contrary to SCM's suggestion, it seems that Congress in enacting section 8 did not distinguish between the scope of the paragraph addressed to banks and that of the paragraph addressed to industrial corporations, since the Report appears to equate the approach taken by the statute as to both types of corporations:

> In this, *as in the preceding paragraph relating to banks*, it was not deemed necessary or advisable that interlocking directorates should be prohibited between the smaller industrial corporations . . . The concentration of wealth, money, and property in the United States under the control and in the hands of a few individuals *or great corporations* has grown to such an extent . . . .. (Emphasis supplied).

Id. Thus, section 8 should not be read with undue literalness, since it is clear that Congress intended to prohibit the large industrial corporations from having interlocked directorates. In sum, based upon the interrelationship of various sections of the Clayton Act, the policy of the statute, the legislative history and the Commission's long-standing administrative practice, we conclude that the Commission's interpretation is sensible and correct.

---

10. "Person" includes corporations. 15 U.S.C. § 12.

11. 15 U.S.C. § 21(b).

12. See note 8 *supra.*

13. The Commission noted, in its opinion below: "The language of Section 8 read *in vacuo* perhaps leaves some doubt as to the entities its proscription is intended to cover. . . ." 89 F.T.C. at 61–62.

Anticipating this construction, petitioner further argues that a section 8 order is necessarily limited to ordering the corporation to "rid itself" of the offending director, and that where, as here, the offending director has resigned, no basis exists for such an order. We have emphasized the "rid itself" language of section 11 to demonstrate the reasonableness of our conclusion that section 8 encompasses corporate violators as well as individual directors. But section 11 as a whole makes it clear that once a violation of the Clayton Act is shown, a cease and desist order concerning future violations may issue, and it is well established that voluntary cessation of a section 8 violation does not of itself preclude injunctive relief. See *United States v. W. T. Grant Co., supra,* 345 U.S. at 632–33, 73 S.Ct. 894.

### III

We next consider SCM's argument that even if section 8 applies to it, the Commission erred in entering a broad cease and desist order regulating SCM's future conduct without the showing necessary for injunctive relief. SCM maintains that (1) there is no evidence of any danger of recurrent violation by SCM of the Clayton Act, since Bond resigned as a director of SCM shortly after the complaint was filed, and (2) in any event, under *United States v. W. T. Grant, supra,* the Commission applied the wrong legal standard in deciding the issue. For reasons set forth below, we believe that the second of these arguments has sufficient merit to warrant a remand to the Commission.

In *W. T. Grant,* the United States brought an action in a federal district court under section 15 of the Clayton Act[14] to enjoin the defendants from violating section 8. On the basis of defendants' uncontradicted affidavits, which informed the district court that the individual defendant had resigned from the offending directorships and that the corporate defendants had

no intent to resume such interlocks, the trial judge granted summary judgment for defendants, 345 U.S. at 635, 73 S.Ct. 894. In affirming that judgment, the Supreme Court discussed a number of issues. First, the Court analyzed the question of mootness and noted that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot," id. at 632, 73 S.Ct. at 897, but added that an action can be mooted if the defendant meets the heavy burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." Id. The Court then discussed whether the district court had abused its discretion in denying the government injunctive relief. On this issue the Court pointed out that

> [T]he moving party must satisfy the court that relief is needed. *The necessary determination is that there exists some cognizable danger of recurrent violation,* something more than the mere possibility which serves to keep the case alive. (Emphasis supplied.)

Id. at 633, 73 S.Ct. at 898. While in many cases there will be no practical difference between dismissing a case for mootness and denying a request for injunctive relief, nevertheless, the two concepts are analytically distinguishable and a court could find that a case is not moot and yet deny injunctive relief.[15]

In the proceeding before the ALJ, SCM contended that the action against it was moot because of Bond's "voluntary" resignation from its board of directors shortly after the complaint issued. The ALJ concluded that the case against SCM was not moot and that the moving party (the Commission staff) had met its burden of showing that injunctive relief was warranted. On appeal, the Commission affirmed the ALJ, but its opinion contained the following statement:

> [SCM's] position here would necessitate that having shown a violation, complaint

---

14. 15 U.S.C. § 25.

15. See, e. g., *United States v. Newmont Mining Corp.,* 34 F.R.D. 504 (S.D.N.Y.1964).

counsel then demonstrate by affirmative evidence the likelihood of future additional violations. To the contrary, we think the violation is itself the best evidence of the possibility of future such occurrences, and that *the burden rests with respondent to demonstrate that violations will not recur before consideration may be given to omitting an order.* . . . (Emphasis supplied.) 89 F.T.C. at 66. SCM strenuously urges that this statement, particularly the emphasized portion, is inconsistent with the *Grant* standard and that this error of law requires remand.

The Commission pointed out, as did the ALJ, that SCM promised only not to rehire Bond so long as he is a director of Kraftco or any other corporation with which SCM competes. SCM did not promise to avoid other unlawful interlocks with Kraftco or with anyone else. The Commission also pointed out, as did the ALJ, that "the record discloses nothing of the procedures used by [SCM] to prevent such occurrences . . . ." Under the standard elaborated in *Grant*, and frequently followed by us,[16] the ALJ and then the Commission had discretion to find that a cease and desist order was warranted.[17] However, as appears from its own decision, the Commission seems to have applied an erroneous standard and confused SCM's burden on the defense of mootness with the FTC staff's burden of showing that an injunction was warranted. This error is indicated by the

Commission's statement in its brief that "where a violation of the law has been shown, the burden is upon the defendant to show that injunctive relief is unnecessary," citing *United States v. Concentrated Phosphate Export Association, Inc.*, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). But *Concentrated Phosphate* does not stand for so broad a proposition, since that case, like the language from *Grant* it relies upon, dealt with mootness.

■ Because of this apparent error, we conclude that the proceedings should be remanded to the Commission. Moreover, both SCM and the FTC staff should be given an opportunity upon remand to address themselves to the issue whether "there exists some *cognizable* danger of recurrent violation." (Emphasis supplied). *Grant, supra,* 345 U.S. at 633,[18] 73 S.Ct. at 898.

## IV

■ We turn finally to SCM's contention that the Commission has proceeded against it in discriminatory fashion. SCM first argues that the FTC's use of a formal complaint here constituted prejudicial enforcement of section 8. However, section 11 specifically authorizes the FTC to issue cease and desist orders against section 8 violators. Prior to April 4, 1975, the FTC carried out this mandate under either informal (Part 2) or formal (Part 3) complaint procedures.[19] Since that time, all section 8

16. See, e. g., *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2d Cir. 1977); *CFTC v. British American Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 806–09 (2d Cir. 1975).

17. The ALJ and the Commission properly pointed out that in *Grant*, 345 U.S. at 634, 73 S.Ct. 894, the Court indicated that had it been the trier of fact, the result might have gone the other way. See 89 F.T.C. at 56 and 65.

18. We reject SCM's claim that the record was insufficient as a matter of law to support a grant of injunctive relief. SCM's interlock here was longstanding and involved substantial amounts of interstate commerce. Moreover, SCM has not disclosed what steps, if any, it has

taken to avoid such interlocks in the future. On the other hand, SCM has not been shown to have violated section 8 after the date Bond resigned from its board of directors and "there is no *per se* rule requiring the issuance of an injunction upon the showing of a past violation." *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2d Cir. 1977). It is for the FTC to weigh these considerations on remand, and we express no view on the merits.

19. Under then existing Rules of Practice Part 2, the FTC could issue a proposed complaint for the purpose of encouraging settlement before the formal complaint was issued under Rules of Practice Part 3. The FTC could, prior to April 4, 1975, start with either Part 2 or Part 3 complaints and apparently often chose the former. See 40 Fed.Reg. 15235 (1975).

complaints, including the complaint involved here,[20] have been issued under Part 3.[21] To the extent that SCM's argument is based on the facts that it was one of the first to be subject to the changes in procedure and that the investigation underlying this complaint began before those changes, the argument is without merit. Cf. *Ger-Ro-Mar, Inc. v. FTC*, 518 F.2d 33, 35 (2d Cir. 1975). Moreover, we do not see how SCM was prejudiced by the use of one procedure rather than another, since in either case SCM's refusal to consent to an order concerning any interlocking director other than Bond would have spawned this litigation.

SCM also points to the differences between the terms of the consent decree entered by Kraftco[22] and the terms of the cease and desist order issued against SCM as further evidence of the FTC's unlawful discrimination against SCM. Thus, citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and its progeny, SCM argues that the FTC has unconstitutionally punished it by imposing substantially harsher terms in the SCM order because of SCM's decision to litigate the merits of this complaint. However, we need not consider whether substantial, inexplicable differences between the terms of orders and decrees arising out of the same violation and entered against seemingly equally culpable violators would constitute an unconstitutional price tag on the exercise of due process rights. Cf. *Dan J. Sheehan Co. v. Occupational Safety and Health Review Comm'n*, 520 F.2d 1036 (5th Cir. 1975), cert. denied, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). After a thorough comparison of the orders involved here, we find the differences not sufficiently substantial to raise this constitutional question,[23] especially in light of the FTC's broad discretion in drafting remedial orders. See, e. g., *Fedders Corp. v. FTC*, 529 F.2d 1398, 1401–02 (2d Cir.), cert. denied, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). Moreover, the differences between the orders are not arbitrary or irrational in light of the facts before the FTC that (1) SCM had been in a better position to avoid the interlock initially, since at the time Bond was made a director at SCM he had lawfully been a member of Kraftco's board for many years, (2) SCM never conceded that it or even Bond had violated section 8, whereas Kraftco immediately appeared more conciliatory on both of these issues, and (3) SCM never promised to avoid unlawful interlocks in the future nor disclosed what steps, if any, had been taken to achieve that end.

We therefore remand this case to the FTC for further proceedings consistent with our opinion.

---

**20.** The complaint was issued on June 17, 1975.

**21.** See 16 C.F.R. §§ 2.31, 3.1 et seq.; 40 Fed. Reg. 15235 (1975).

**22.** SCM also points to the terms of Bond's consent decree, but the terms of that individual director's order are clearly inapposite for purposes of comparison with SCM's order.

**23.** Both Kraftco and SCM were ordered for the next five years to have each director sign written statements effectively disclaiming membership on the board of any competing corporation. To effectuate this requirement, SCM's directors were ordered to submit a list of the other corporations and the products and services of such corporations to SCM, whereas Kraftco was directed to submit a list of its major products to its directors. Kraftco and SCM were further required to file annual compliance statements with the FTC for five and ten years respectively, and both were also required to give the FTC 30 days notice of any corporate change which might affect compliance obligations arising out of the order.

The most substantial difference in the orders was that SCM was expressly enjoined from violating section 8 as regards any company—merely a restatement of SCM's preexisting duty under section 8—whereas the express portion of the Kraftco order only enjoins future violations as regards interlocks with SCM. To some extent, this difference is offset by paragraph 2 of the Kraftco order, which prohibits Kraftco from allowing any director on its board who does not certify that he or she does not serve on the board of any corporation (i. e., not just SCM), which substantially competes with Kraftco.