**SQUARE D COMPANY, Plaintiff,**

**v.**

**SCHNEIDER S.A., SQD Acquisition Co., Merlin Gerin S.A., Telemecanique S.A., Societe Parisienne D'Entreprises Et De Participations, Schneider USA, Inc., Elican Holdings, S & K Holdings, Inc., Standard, Komodikis & Co., Inc., Mahmoud Tiar, George Komodikis, Compagnie Financiere De Paribas, Banque Paribas and Societe Generale, Defendants.**

**No. 91 Civ. 1438 (LBS).**

United States District Court, S.D. New York.

March 28, 1991.

Wachtell, Lipton, Rosen & Katz, New York City (Bertram M. Kantor, of counsel), and Foley & Lardner, Milwaukee, Wis., for plaintiff.

Skadden, Arps, Slate, Meagher & Flom, New York City (Stephen Axinn, Peter E. Greene, Clifford H. Aronson, of counsel), for defendants.

OPINION

SAND, District Judge.

On March 26, 1991, this Court heard oral argument on defendants' Order to Show Cause why Counts I, II, III and IV of plaintiff's Amended and Supplemental Complaint ("Complaint") should not be dismissed. At that time the Court issued an oral Opinion denying defendants' motion and reserved the right to issue a subse-

quent written Opinion. The following constitutes that written Opinion.

In the motion presently before the Court, defendants move to dismiss the first four Counts of the Complaint pursuant to F.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Counts I and II allege violations of § 7 of the Clayton Act, 15 U.S.C.S. § 18 (1990). Count III alleges violations of § 8 of the Clayton Act, 15 U.S.C.S. § 19 (1990). Count IV alleges that defendants have conspired to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C.S. § 1 (1990). Plaintiff seeks preliminary and permanent injunctive relief.

## I. BACKGROUND

Plaintiff, Square D Company ("Square D"), is a Delaware corporation with its principal place of business in Palatine, Illinois. Square D is principally engaged in the business of producing electrical distribution and electrical control products for commercial and industrial use.

The defendants in this action are a number of corporations and individuals all allegedly affiliated with Schneider, S.A. (hereinafter "Schneider"). The complaint alleges that defendant Schneider, acting through a group of commonly controlled companies known as Groupe Schneider, is engaged in an illegal plan to acquire Square D.

The complaint states that on February 21, 1991, Schneider announced its intention to engage in a proxy fight for control of Square D's Board of Directors, the purpose of which is to install Directors who will effectuate consummation of a merger between Square D and Schneider. Complaint ¶ 62. The complaint also states that Schneider launched a hostile all-share tender offer for Square D on March 4, 1991. Complaint ¶ 65.

With regard to the proxy fight, the complaint alleges that Schneider has proposed a slate of eleven candidates for Square D's Board. All eleven are allegedly "either employees, officers, directors, or consultants of Schneider or one or more of its subsidiaries." Complaint ¶ 122. The complaint further alleges that one of the Schneider nominees, defendant Mahmoud Tiar, sits on the Board of a Schneider subsidiary that competes with Square D in the United States. Complaint ¶ 124. It also asserts that five other nominees are officers or directors of two Schneider affiliated companies—Spie Batignolles and Jeaumont-Schneider—which in turn own a controlling interest in a third company (Jeumont Schneider Automation) which competes with Square D. Complaint ¶ 125.

## II. ANALYSIS

In deciding a motion to dismiss, this Court is required to accept the plaintiff's allegations as true and construe those allegations in the light most favorable to plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint will be dismissed only if the plaintiff can prove no set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

### A. Counts I and II—Alleged Violations of § 7 of Clayton Act

Section 7 of the Clayton Act, as amended, provides in pertinent part that "No [natural or legal] person engaged in commerce ... shall acquire, directly or indirectly, the whole or any part of the stock or ....assets of another person ... where in any line of commerce ... in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C.S. § 18. Counts I and II of the Amended Complaint allege that if Schneider succeeds in acquiring Square D, the effect will be to lessen actual or potential competition among certain products in the United States.

Defendants' attack on the first two Counts of the Amended Complaint centers on the contention that plaintiff is not entitled to seek injunctive relief under § 7 of the Clayton Act because it lacks standing.

Defendants claim that Square D has not and cannot allege "antitrust injury." *See Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986).

Defendants recognize that in *Consolidated Gold Fields PLC v. Minorco, S.A.,* 871 F.2d 252, 257–61 (2d Cir.), *cert. dismissed,* 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989), the Second Circuit held that a target of a hostile takeover had standing under § 7 of the Clayton Act because the target's allegation that it would "lose its ability to compete independently" was antitrust injury within the meaning of *Cargill.* Defendants further acknowledge that Square D has alleged that if Schneider's takeover attempt succeeds, Square D will lose its independence as a corporate entity. *See* Complaint ¶¶ 102, 118.

Defendants' primary argument—which occupies a full twenty-two pages in their opening brief—is not that *Minorco* is distinguishable, but rather that it was wrongly decided. Whatever the merits of that argument, it has little relevance to the decision of this motion by this Court. Quite simply, *Minorco* is the law of the Second Circuit and this Court is bound to follow it.

Defendants' second argument is that the instant case is distinguishable from *Minorco,* at least as to Count I of the Amended Complaint. Defendants argue that in *Minorco,* the challenged merger was between two entities which were engaged in actual competition, whereas in this case, Count I of the Amended Complaint alleges only the loss of *potential* competition.

This Court does not read *Minorco* as turning on the presence of actual, as opposed to potential, competition between the acquiror and the target; rather, the case turned on the majority's interpretation of what constituted antitrust injury for purposes of § 7 of the Clayton Act. Of course, in *Minorco,* the Court had no occasion to address the issue of potential competition because that issue was not raised on the facts of that case. However, it appears to this Court that the reasoning of Judge Newman, writing for the majority in *Minorco,* would apply with equal force to the loss of potential competition.

Moreover, as the complaint alleges and as amplified by plaintiff's counsel at oral argument, the line between actual and potential competition in this controversy may not be as clear as the division between counts in the complaint implies. The facts alleged in the complaint indicate that Schneider has entered the North American market through acquisitions of a Canadian and a Mexican company, and that it attempted unsuccessfully to acquire an American company. As such, the distinction between actual and potential competition in this case is somewhat unclear, especially in light of the suggestion of plaintiff's counsel that the relevant market for antitrust purposes may be North America, as opposed to just the United States.

On the basis of the reasons set out above, this Court rejects defendants' contention that Count I—the potential competition claim—does not state a claim under *Minorco.* In addition, we note that Count II of the Amended Complaint, which also asserts a putative violation of § 7 of the Clayton Act, alleges a diminution in actual competition and is therefore clearly sufficient under *Minorco.*

At oral argument, counsel for defendants made an oral application for a certification by this Court under 28 U.S.C. § 1292(b) (1988), with respect to this Court's decision not to dismiss Counts I and II of the Complaint. Under § 1292(b), certification is appropriate where there is a controlling question of law as to which there are substantial grounds for difference of opinion and where an immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b).

In this case, there is no substantial difference of opinion in this Circuit as to the issue of Square D's standing to raise the claims asserted in Count II of the Complaint. That the law of standing may be different in other Circuits or that *Minorco* may have received an unfavorable reception in some of the secondary literature does not create a substantial difference of opinion as to the law in this Circuit. As to

the standing issue raised by Count I of the Complaint, the potential for difference of opinion is greater. Yet because the line between actual and potential competition is blurred under the facts alleged in the Complaint, certification of the standing issue under Count I, but not Count II, would not be an appropriate way of achieving a prompt and efficient resolution of this case.

Indeed, certification would be likely to hinder the resolution of this case, which is proceeding on an expedited schedule due to the immediacy of the issues it raises. This Court has scheduled a hearing on the merits with respect to five non-antitrust counts of the Complaint for May 13, 1991. Were this Court to certify the standing issue raised in Counts I or II of the Complaint under § 1292(b), it would be unrealistic to suppose that the Second Circuit would determine whether or not to accept the certification, have briefing and argument, and decide the issue prior to the time when this case will be resolved, in significant part or whole. Once this case is resolved, Schneider will have the opportunity to address the *Minorco* issue to the Second Circuit, and beyond if appropriate, on the basis of a full record developed in this Court. Accordingly, defendants' application for certification under § 1292(b) is denied.

### B. *Count III—Alleged Violation of § 8 of the Clayton Act*

Section 8 of the Clayton Act provides, in pertinent part, that "No person shall, at the same time, serve as a director or officer in any two corporations ... that are ... engaged in ... commerce ... [and are] competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws." 15 U.S.C.S. § 19. Count III of Square D's complaint alleges that the defendants' plan to conduct a proxy fight violates § 8 because all of the defendants' nominees are "employees, officers, directors or consultants of Schneider or its subsidiaries." Complaint ¶ 122.

In their briefs, the defendants concede that one of the nominees, defendant Mahmoud Tiar, is a director of a Schneider-affiliated company that competes with Square D.[1] However, defendants argue that the other ten nominees are not "officers or directors" within the meaning of § 8.

Square D contends the other ten nominees are all "agents" of Schneider. Square D argues that because Schneider is a "person" within the meaning of § 8, and because some of Schneider's subsidiaries compete with Square D, the election of the nominees to Square D's Board would violate § 8, in that Schneider would have agents on the Boards of both Square D and its competitors. Defendants argue in response that Square D's "agency" theory of § 8 liability is flawed. They point out that § 8, on its face, applies only to "officers and directors," and not to agents.

■ In deciding the validity of plaintiff's agency theory, we must begin by looking to the policies underlying § 8. The purposes of § 8 are to avoid the opportunity for the coordination of business decisions by competitors and to prevent the exchange of commercially sensitive information by competitors. *See United Auto Workers*, 97 F.T.C. 933, 935 (1981). Section 8 establishes a prophylactic rule designed to avoid potential antitrust violations before they occur. *See SCM Corp. v. Federal Trade Comm'n*, 565 F.2d 807, 811 (2d Cir.1977).

■ In view of the prophylactic and remedial purposes of § 8, we decline to read it as literally as the defendants suggest. If such a literal reading were adopted, it would be easy for a company to interlock with a competitor and yet evade § 8 liability simply by calling its agents on the competitors' board something other than either officers or directors. Such a result would exalt form over substance, contrary to the intent of Congress in enacting the antitrust laws. *See United States v. Yellow Cab*

---

**1.** Defendants' counsel advised this Court at oral argument that Mr. Tiar has resigned from the Board of the competitor. Thus Mr. Tiar's status

as a nominee may no longer be an issue in this case.

*Co.*, 332 U.S. 218, 227, 67 S.Ct. 1560, 1565, 91 L.Ed. 2010 (1947).

For purposes of deciding this motion to dismiss, at this early procedural stage of the case, this Court concludes that a cause of action under § 8 is stated where a company attempts to place on the Board of a competitor individuals who are agents of, and have an employment or business relationship with, such company. In such circumstances, the policies underlying § 8—preventing the coordination of business decisions by competitors and the exchange of commercially sensitive information—are implicated. *See United States v. Cleveland Trust Co.*, 392 F.Supp. 699, 711–12 (N.D.Ohio 1974); *United Auto Workers*, 97 F.T.C. at 935–36.

Defendants urge that recognition of the agency theory advanced by Square D will be tantamount to holding that § 8 prevents a company from attempting to acquire a competitor through a proxy fight. We disagree. In the view of this Court, § 8 would not be implicated where a competitor seeks the election of an "agent" whose only purpose is to consummate a takeover and who does not otherwise have a business relationship—such as that of officer, director or employee—with the firm promoting his election. In such a case, the concerns underlying § 8 would not be implicated due to the limited purpose of the agency. In this case, however, Schneider's purported "agents" allegedly do have a business relationship with Schneider, and therefore the concerns underlying § 8 are implicated.[2]

We note that with regard to five of the Schneider nominees a second basis exists for the possible application of § 8. Those five nominees—Messrs. Bitouzet, Coret, Nicolaidis, Reveniaud and Pecquer—are allegedly officers or directors of Spie Batignolles ("Spie") and Jeumont–Schneider, two companies allegedly controlled by Schneider. Those two companies, in turn, allegedly control a third company, Jeumont–Schneider Automation ("JSA"), which competes with Square D.

■ Square D argues that the competition between Square D and JSA can be imputed to Spie and Jeumont–Schneider, such that the election of officers or directors of the latter two entities to the Square D Board would violate § 8. For purposes of this motion to dismiss, we accept plaintiffs' contention. In *Kennecott Copper Corp. v. Curtiss–Wright Corp.*, 584 F.2d 1195, 1205 (2d Cir.1978), the Second Circuit reversed a finding of § 8 liability premised on the theory that competition with a subsidiary could be deemed to a parent corporation, where there was no claim that the parent exercised substantial control over the business decisions of the subsidiary. The *Kennecott* Court declined to express an opinion on whether such deeming might be appropriate if the parent had exercised control over the subsidiary.

This court believes that competition with a subsidiary may be properly deemed to a parent corporation where the parent closely controls or dictates the policies of its subsidiary. In this case, whether Spie and Jeumont–Schneider exercise such control

---

**2.** At oral argument, this Court inquired of defendants' counsel why Schneider had selected as nominees individuals with whom it was associated, thereby raising a potential § 8 issue. Counsel responded that the individuals were chosen because they were persons well known to Schneider.

This response led to the obvious inquiry of why the route chosen by Mr. Tiar—that is, resignation—was not followed by the nominees, thereby strengthening significantly Schneider's contention that the § 8 issue is either unripe or moot. Schneider's counsel responded that resignation would require the nominees to give up longstanding relationships with the companies with which they served prior to becoming proxy nominees.

The Court then inquired why the individuals did not simply resign as proxy nominees and be replaced by nominees unaffiliated with Schneider. Counsel indicated that the reason was Square D's contention that the designation of new proxy nominees at this time would be a violation of its bylaws and that Schneider would have to wait for another year to designate new nominees.

This Court expresses no view as to Square D's contention that the designation of new nominees would have that consequence. We set forth the discussion above only to illuminate the reason why the § 8 issue is of such concern to the parties.

over JSA is a question of fact that precludes granting of the motion to dismiss.

■ The final argument raised by defendants in support of their motion to dismiss is that Square D's § 8 claim is not ripe. Defendants argue that its nominees may not be elected, and that even if its nominees are elected and interlock results, the interlock would exist for only a very brief time prior to the merger of Square D into Schneider. For purposes of this motion, we reject defendants' view. Schneider has announced its intention to engage in a proxy fight in an effort to have its nominees elected to the Square D Board. As such, it cannot rely on its possible failure in this endeavor as an excuse to avoid judicial review. Likewise, the short life-span of the interlock that would allegedly result from the election of Schneider's nominees does not make Square D's § 8 claim unripe. While the short duration of the alleged interlock might bear on the degree to which the concerns underlying § 8 are implicated—and therefore on the appropriateness of injunctive relief—that fact is not dispositive on the question of whether Count III of the Complaint is subject to dismissal at this time.

In sum, we hold that defendants' motion to dismiss plaintiff's § 8 claims must be denied. There are questions of fact as to whether the Schneider nominees are agents of Schneider and have a business relationship with Schneider. There are also questions of fact as to whether Spie and Jeumont–Schneider exercise substantial control over the policies of JSA. These fact questions cannot be resolved on a motion to dismiss and must await further proceedings.

### C. Count IV—Alleged Violation of § 1 of Sherman Act

■ In Count IV of the Complaint, Square D alleges that the acquisition proposal and proxy fight initiated by Schneider are overt acts in furtherance of a conspiracy among Schneider, its subsidiaries and its bank to eliminate Square D as a competitor. See Complaint ¶ 131. Square D contends that this alleged conspiracy violates § 1 of the Sherman Act.

Defendants argue that Count IV fails to state a claim because the requisite plurality of actors does not exist. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767–69, 104 S.Ct. 2731, 2739–41, 81 L.Ed.2d 628 (1984). Defendants assert, in essence, that a corporation's officers, employees, agents and subsidiaries are legally incapable of conspiring with the corporation itself.

We note the apparent inconsistency between Count III of the Complaint, which is premised on the assertion that Schneider's subsidiaries and agents are acting as one entity under Schneider's direct control, and Count IV, which appears to assert that the various defendants constitute discrete entities "previously pursuing divergent goals," id. at 771, 104 S.Ct. at 2741–42, capable of incurring § 1 liability. However, we recognize that we are dealing with a motion to dismiss and that alternative pleading is permitted in the federal courts, especially at the preliminary stages of litigation.

While a corporation is legally incapable of conspiring with its own wholly-owned subsidiary, see id. at 774–77, 104 S.Ct. at 2743–45, Square D has alleged that Schneider conspired with its partially-owned subsidiaries, officers or employees of those subsidiaries, and its bank. At this stage of the proceedings, drawing all inferences favorably towards plaintiff, we cannot conclude that plaintiff's § 1 claims are legally insufficient. Therefore, especially in view of the fact that it appears that the proof of plaintiff's § 1 claims at a hearing would be no different from the proof offered in support of its other antitrust claims, we decline to dismiss Count IV.

### CONCLUSION

For the reasons given above, defendants' motion to dismiss is denied in its entirety.

So Ordered.